# IN THE UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF MISSOURI
# WESTERN DIVISION

| | |
|---|---|
| FEDERATED MUTUAL INSURANCE CO., | ) |
| Plaintiff, | ) |
| vs. | ) Case No. 11-00172-CV-W-FJG |
| PEERY'S AUTO PARTS, L.L.C., C&A AUTOMOTIVE, INC., DEBBIE PEERY, CODY PEERY, and ABBY PEERY, | ) |
| Defendants. | ) |

**ORDER**

Pending before the Court are (1) Plaintiff Federated Mutual Insurance Company's Motion for Summary Judgment (Doc. No. 59) and (2) Defendants' Motion for Partial Summary Judgment (Doc. No. 72). Both will be considered below.

**I.   Background/Facts**

On November 24, 2010, plaintiff filed its Complaint for Declaratory Judgment (Doc. No. 1) in the United States District Court for the Eastern District of Missouri. On February 11, 2011, defendants' motion to transfer venue to the Western District of Missouri was granted. See Order, Doc. No. 10. On February 22, 2011, defendants filed an answer to plaintiff's complaint which included counterclaims for breach of contract and vexatious refusal to pay. See Doc. No. 15.

Plaintiff's complaint alleges that plaintiff issued a policy of insurance (hereinafter, "Policy") to Peery's Auto Parts, L.L.C. (hereinafter, "Peery's") with C&A Automotive, Inc. (hereinafter, "C&A") listed as an additional named insured under the policy. Both businesses are auto parts stores. Peery's is located in Osceola, Missouri, and C&A is located in Humansville, Missouri.

On October 25, 2008, a fire damaged the premises of C&A, and as a result of the fire loss, plaintiff paid C&A's claim totaling approximately $470,036.26 for damage of the building and contents.  On October 27, 2010, over two years after the fire, plaintiff took defendant Debbie Peery's Examination Under Oath.  Doc. No. 60, Ex. 10.  Less than a month later, plaintiff filed the present lawsuit.  Plaintiff claims in its complaint that the Policy is void due to concealment or misrepresentation of material facts surrounding the underwriting, procurement, and renewal of the Policy.

Plaintiff, in its motion for summary judgment and suggestions in support asserts that defendants, who it has collectively identified as "Peery's,"[1] did various different acts that amounted to misrepresentations or concealments.  In particular, plaintiff asserts in its motion for summary judgment that defendants made the following misrepresentations: (1) defendants submitted a bill for $24,000 for cleanup and disposal of debris for work that had not been done and for which defendants had not yet paid; (2) defendants submitted a bill for a refrigerator in the amount of $2,014.84, when the refrigerator that was actually

---

[1] In its summary judgment briefing, plaintiff has, in this Court's opinion, improperly lumped all its claims against the various defendants together, as though a corporation, L.L.C., and three individuals have all acted in concert as to every assertion in its statement of uncontroverted facts.  See, e.g., Doc. No. 60, p. 1 (asserting summary judgment is sought against "Defendants Peery's Auto Parts, L.L.C., C&A Automotive, Inc., Debbie Peery, Cody Peery, and Abby Peery (collectively 'Peery's')"), ¶ 3 ("Peery's is the owner of two auto parts business in Missouri."), and ¶ 9 ("Peery's submitted a bill to Federated from Roger Motley on March 25, 2009 for cleanup and disposal of debris . . . .").  It is completely unclear from these examples who owns C&A and Peery's, and who actually submitted the bills to plaintiff.  These are not the only examples; plaintiff has conflated all defendants together as "Peery's" throughout its briefing.

Plaintiff has made it nearly impossible for the Court to determine from the face of its suggestions in support of its motion to tell which defendant actually did the acts in question (submitted the allegedly false bills, made the alleged misrepresentations, etc.).  The Court will not endeavor to separate out the actions as to each defendant, as it makes little difference to the outcome of plaintiff's motion for summary judgment.  However, plaintiff is cautioned that at any trial of this matter, it must not consider "Peery's" to be some collective group, and instead must prove its case as to each defendant.

damaged in the fire was purchased for $460.00; (3) defendants submitted a claim for the same hydraulic die cut equipment twice, once in February 2009 and once in March 2009; (4) defendants made a claim for lost accounts receivable of $10,000.00 by looking at the data generated at Peery's (a business in another town, which was not damaged in the fire), instead of using old tax returns from C&A (which plaintiff asserts would be a better means of estimating that amount, given that all of C&A's recent business records were destroyed in the fire); and (5) defendants made a claim for lost income of $25,000.00, which plaintiff asserts is unsupportable given C&A's tax returns from the years 2005-2008.

Defendants indicate in their response to plaintiff's motion for summary judgment (Doc. No. 83), however, that (1) no one on behalf of C&A or Peery's ever signed a Proof of Loss or Statement of Loss under oath; (2) when the alleged "misrepresentations" were made, plaintiff did not accuse defendants of making intentional material misrepresentations, but waited 19 months to file the complaint in this matter; (3) approximately $16,000 in debris removal remains to be done, and approximately $8,000 has already been done and paid-for, making the $24,000 total cost of debris removal not material; (4) plaintiff's agent, Kendall Clavin, told defendant Debbie Peery to submit the $24,000 estimate for debris removal to plaintiff prior to work being done and paid for; (5) defendant Debbie Peery told Brian Hughes (plaintiff's claims adjuster) that the $2,014.84 receipt for a refrigerator was not for the refrigerator destroyed in the fire, but Mr. Hughes told her to submit the receipt anyway; (6) later in the claims process, Mr. Hughes and Jill Bean (special investigator for plaintiff) requested an actual receipt for the destroyed refrigerator, and C&A through its attorney submitted the receipt for the $460 refrigerator destroyed in the fire; (7) as to the hydraulic equipment, the statement of loss attached to plaintiff's suggestions that supposedly includes the hydraulic equipment is not itemized to specifically list the hydraulic equipment, and thus if hydraulic equipment was included in a previous submission of documents, defendants' subsequent request for reimbursement was inadvertent (see Doc.

3

No. 83, Ex. E, statement of loss); (8) accounts receivable records were kept on computers that were destroyed in the fire, and Brian Hughes told plaintiff to use information from her other store and any old information from other years to calculate accounts receivable losses; (9) defendants did not conceal the methodology in making their calculations, and counsel for defendants explained this methodology by letter to plaintiff, which defendants characterize as "an honest opinion of [defendants'] evaluation of business income and accounts receivable losses for Plaintiff's consideration" (Doc. No. 83, p. 5); and (10) defendants' methodology for calculating lost income was fully disclosed by defendants' counsel, and net income of the business, before payment of officers' salaries, increased each year between 2005 and 2008 (the year of the loss).

Defendants, in their motion for summary judgment and suggestions in support, note that plaintiff has also asserted in this lawsuit that defendants concealed their knowledge of a property line dispute.[2] Defendant Debbie Peery testified in her examination under oath (Doc. No. 73, Ex. A), that all the deeds in Humansville overlap, and that the church that borders her property claims that they own part of the land, a parking spot behind the C&A building where its employees parked.[3] Doc. No. 73, Ex. A, pp. 43:11-46:13. Debbie Peery testified that she learned of the overlapping deeds in July 2008, before the fire but long after securing insurance on the property. Doc. No. 73, Ex. A, p. 44:12-21.[4] Defendants

---

[2]Plaintiff did not move for summary judgment as to this alleged misrepresentation/concealment.

[3]Notably, neither side has provided the Court with surveys, legal descriptions of the land, or similar information showing where the disputed property line is.

[4]Plaintiff attempts to dispute this, citing to Debbie Peery's examination under oath, where she indicates that she went to the title company to try to clear up the title. See Doc. No. 60, Ex. 10, p. 47. From this, plaintiff extrapolates that Debbie Peery was aware of the conflicting deeds when the property was purchased. However, Debbie Peery's examination under oath says no such thing; plaintiff's counsel did not question Ms. Peery as to when she went to the title company, and only narrowed it down to before the fire occurred, not to before the property was purchased. See id.

4

indicate that defendant Debbie Peery did not know of the land dispute regarding the Subject Property at the time of initially contracting for insurance.

Defendants further indicate that plaintiff has no expert or underwriter that can testify that knowing facts with regard to encroachment of the church's property line on C&A would have influenced a reasonably careful insurance company's decisions concerning the acceptance of risk and what premium to charge. Defendants further note that plaintiff does not have an expert or underwriter that will testify about industry custom.[5] Defendants note

---

[5]Plaintiff's only retained expert is Randall H. Wilson, a Certified Public Accountant, whose testimony relates to the issues of value of debris removal, equipment losses, refrigerator losses, lost accounts receivable, and business interruption. Plaintiff asserts in response that it has identified three of its employees as witnesses who will testify in this case on behalf of the company. Despite making this assertion, however, plaintiff does not attach affidavits from any of its witnesses indicating that a property line dispute affecting one parking space would be material to a reasonable insurer.

Plaintiff also argues that defendant Debby Peery "admitted" in her Examination Under Oath an understanding that the issue of the overlapping property lines "was a serious, important and material factor that the insurer would have wanted to be informed of." Doc. No. 84, p. 3. However, given the state of the law (see § IV, below), it appears that whatever Debbie Peery believes to be "material" would be irrelevant. Further, plaintiff's support this statement appears to be plaintiff's counsel using general, leading questions, and Debbie Peery just agreeing by saying "uh-huh" and "right," without having any idea of the legal importance of what she was being asked. See Doc. No. 60, Ex. 10, pp. 50:17-51:9:

> Q: Okay. Well, with regard to C & A Automotive, from what you've described here, I mean, this sounds like a real – I'll call it an entanglement or a –
>
> A: Uh-huh.
>
> Q: – serious situation that people that would have an interest in this would like to know. You understand that?
>
> A: Right.
>
> Q: Okay. And can you appreciate and understand that an insurance company would like to know what's going on with

5

that the only representation made by Debbie Peery that is part of the record is when she signed a renewal form (ACR Supplement) provided by plaintiff, in which she answered the following questions in the negative: (1) were there any physical changes to the premises? (2) has the insured changed the operation of the business in the past year? (3) are there any new, altered or discontinued operations? and (4) are there any contemplated changes in the operations? See Doc. No. 73-6, p. 3.[6]

The Policy at issue in this case contains the following provision:

C. Concealment, Misrepresentation Or Fraud

> This policy is void in any case of fraud by you as it relates to this policy at any time. It is also void if you or any other insured, at any time, intentionally conceal or misrepresent a material fact concerning:
>
> 1. This policy;

property that they're insuring?

A: Right.

Q: Okay. And that would be an important material thing to the insurance company to understand; right?

A: Right.

Q: To determine whether they would want to stay on the insurance risk or not. Do you understand that?

A: Uh-huh.

Under the circumstances, the Court cannot find a string of "uh-huhs" made by a layperson to constitute a determination as to what would be material to an insurance company.

---

[6]Plaintiff argues in response that defendants did not produce the other 9 pages of the fax. Doc. No. 84, p. 3. Plaintiff, however, does not attach any other relevant pages to its suggestions in opposition to summary judgment. This begs the question; why didn't plaintiff produce the other 9 pages of this fax? The Court will not deny defendants' motion for summary judgment based on plaintiff's mere assertion that other evidence is available, without plaintiff actually providing that evidence to the Court.

6

>  2. The Covered Property;
>  3. Your interest in the Covered Property; or
>  4. A claim under this policy.

See Doc. No. 60, Ex. 12, p. 33.

Plaintiff asserts that C&A has not gone back into business since the fire, and that the payments made by plaintiff to "Peery's" were divided between Deborah Peery, her son Cody, and her daughter Abby, with each of them receiving approximately $40,000 in cash.

## II. Standard

Summary judgment is appropriate if the movant demonstrates that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); Celotex Corp. v. Catrett, 477 U.S. 317, 327 (1986). The facts and inferences are viewed in the light most favorable to the nonmoving party. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-590 (1986). The moving party must carry the burden of establishing both the absence of a genuine issue of material fact and that such party is entitled to judgment as a matter of law. Matsushita, 475 U.S. at 586-90.

Once the moving party has met this burden, the nonmoving party may not rest on the allegations in the pleadings, but by affidavit or other evidence, must set forth facts showing that a genuine issue of material fact exists. Fed. R. Civ. P. 56(c); Lower Brule Sioux Tribe v. South Dakota, 104 F.3d 1017, 1021 (8th Cir. 1997). To determine whether the disputed facts are material, courts analyze the evidence in the context of the legal issues involved. Lower Brule, 104 F.3d at 1021. Thus, the mere existence of factual disputes between the parties is insufficient to avoid summary judgment. Id. Rather, "the disputes must be outcome determinative under prevailing law." Id. (citations omitted).

Furthermore, to establish that a factual dispute is genuine and sufficient to warrant trial, the party opposing summary judgment "must do more than simply show that there is some metaphysical doubt as to the facts." Matsushita, 475 U.S. at 586. Demanding more

7

than a metaphysical doubt respects the appropriate role of the summary judgment procedure: "Summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed to secure the just, speedy, and inexpensive determination of every action." Celotex, 477 U.S. at 327.

### III. Plaintiff Federated Mutual Insurance Company's Motion for Summary Judgment (Doc. No. 59)

Plaintiff asserts that summary judgment in its favor is appropriate, as defendants made several material misrepresentations, including the $24,000 claim for debris removal, the claim for the refrigerator, the attempt to receive payments for hydraulic die equipment twice, the $10,000 claim for lost accounts receivable, and the $25,000 claim for lost profits. Plaintiff asserts that these misrepresentations void the Policy, given that the Policy provides: "It is also void if you or any other insured, at any time, intentionally conceal or misrepresent a material fact concerning . . . [t]he Covered Property . . . [or] . . . [a] claim under this policy." Plaintiff claims that under Missouri law, an insurance policy can be voided even where the insureds claimed their misrepresentations were unintentional. See Doc. No. 60, p. 12, citing Young v. Allstate Ins. Co., 2010 WL 3282594, * 3-4 (E.D. Mo. Aug. 18, 2010).

Plaintiff claims, in particular, that the $24,000 bill for debris removal was a material misrepresentation as defendants claimed that the work had been paid for and completed (when it had not) in an attempt to receive payment under the policy. As for the refrigerator, plaintiff indicates that the $2,014.84 refrigerator was an item of defendants' personal property instead of the $460.00 refrigerator owned by C&A Automotive, and the only explanation for providing a receipt for a refrigerator costing over four times as much is that

8

defendants made a material misrepresentation.[7] Plaintiff indicates that attempted double recovery for the hydraulic die cut equipment could only be a material misrepresentation. Plaintiff further asserts that the defendants' claim for lost accounts receivable, by using the accounts receivable of Peery's as a basis instead of using C&A's old tax returns, is a misrepresentation "by claiming the policy limits of $10,000 without a sufficient basis when the relevant documents project an accounts receivable balance of only $3,538.00." Doc. No. 60, p. 18. Finally, plaintiff argues that the claim for the policy limits of $25,000 in lost business income is a misrepresentation as defendants "ignored that C&A Automotive had experienced declining net sales over the previous three years and most rapidly in the six months leading up to the fire." Doc. No. 60, p. 19.

Defendants assert in opposition that plaintiff has not demonstrated an <u>intentional</u> misrepresentation occurred, as required by the Policy. Further, defendants note there is no proof of loss signed by defendants. Defendants also argue that the valuation of lost profits and lost accounts receivable is a difference of opinion of value, not any sort of intentional material misrepresentation. With respect to the cost of debris removal, defendants have provided the affidavit of the same contractor who provided the $24,000 estimate indicating that $16,000 of work remains to be done to remove the debris. With

---

[7]Plaintiff also asserts that Debbie Peery lied in her examination under oath as to how she acquired the $2,014.84 refrigerator; plaintiff asserts that Debbie Peery acquired that refrigerator through a previous insurance claim submitted to Farm Bureau Insurance Company. Plaintiff asserts that defendants' concealment of the circumstances in which the $2,014.84 refrigerator was acquired amounts to another material misrepresentation by defendants. The Court is not unsure, however, that the circumstances by which Debbie Peery acquired the $2,014.84 refrigerator are relevant, as the insurance policy is only void if the insured makes a material misrepresentation as to a material fact concerning the covered property or a claim under this policy. The circumstances by which Debbie Peery acquired the $2,014.84 refrigerator are only tangentially related to whether that refrigerator should be covered by the insurance Policy. In other words, where the money for the $2,014.84 refrigerator came from is not material; what is material is whether the refrigerator that was destroyed by the fire was worth $2,014.84 or $460.00.

9

respect to the hydraulic die cut equipment, defendants indicate that any double submission was an accident, not an intentional misrepresentation. Finally, defendants argue that they relied to their detriment on advice given to them by plaintiff's agents during the claims process, by submitting estimates for work not yet completed, receipts for similar (but not the same) items, and estimates of accounts receivable based on methodology suggested by plaintiff's agents.

Defendants suggest that under the circumstances, whether there were intentional material misrepresentations are questions for the jury. See Galvan v. Cameron Mut. Ins., 733 S.W.2d 771, 773 (Mo. Ct. App. 1987). This Court agrees. On the record before it, the Court finds that questions of material fact remain as to whether defendants made material misrepresentations in their insurance claims. For instance, opinions as to the valuation of lost income and accounts receivable can vary widely in cases such as these, and the Court questions whether there can even be "misrepresentations" when defendants fully disclose the methodology they used to calculate loss, even if plaintiff believes that methodology to be faulty.[8] Additionally, there are questions as to what plaintiff's agents told defendant Debbie Peery to do as to submission of claims for debris removal, lost accounts receivable, and the refrigerator. Finally, there are questions of defendants' intent throughout; the Court finds plaintiff's attempts to argue that unintentional misrepresentations could void the policy to be unavailing, given that the language of the Policy provides the Policy could be void if you "**intentionally** conceal or misrepresent a material fact." Doc. No. 60, Ex. 12, p. 33 (emphasis added).

Further, the Court has no signed proof of loss statements from defendants before it, and there is very little correspondence from plaintiff to defendants in the record. Without having such a record (or an explanation as to why such a record does not exist), the Court cannot properly evaluate plaintiff's claims. See DePalma v. Bates County Mut. Ins. Co.,

---

[8]Defendants did not affirmatively move for summary judgment on this issue.

10

24 S.W.3d 766, 770 (Mo. Ct. App. 2000)(finding that where an insurer rejects proof of loss statements submitted by its insured, those proof of loss statements do not become part of the claim and therefore cannot be the basis of a misrepresentation claim; further noting that "the only safe and fair course for an insurer to follow when presented with a defective proof of loss is promptly to return the proof of loss to the insured, advising the insured of its defects and insufficiencies and extending to the insured a reasonable time to cure the defects"). Defendants suggest that here, any alleged defects were brought up two years after the claim was paid. Given this assertion, the Court finds there are serious questions of fact as to the viability of plaintiff's misrepresentation claims.

Accordingly, for all the above-stated reasons, the Court finds that questions of material fact remain on plaintiff's claims, and plaintiff's motion for summary judgment will be **DENIED.**

## IV. Defendants' Motion for Partial Summary Judgment (Doc. No. 72)

Defendants indicate that plaintiff has not provided any evidence that it would have rejected the risk or charged defendants a higher premium had it been informed of the overlapping property lines. Defendants note that "Missouri law requires the insurance company to demonstrate that a representation is both false and material in order to avoid the policy when (1) the representation is warranted to be true[;] (2) the policy is conditioned upon its truth[;] (3) the policy provides that its falsity will avoid the policy[;] or (4) the application is incorporated in to and attached to the policy. Otherwise, the insurance company must demonstrate that the representation in the application was false and fraudulently made in order to avoid the policy." Smith ex rel. Stephan v. AF&L Ins. Co., 147 S.W.3d 767, 774 (Mo. Ct. App. 2004). No allegations of fraud were made in plaintiff's complaint.

Defendants note that the application for insurance is not part of the record in this case, and plaintiff has not produced it. Therefore, plaintiff cannot demonstrate that

11

defendants made a misrepresentation at the time of procuring insurance.[9] Defendants state that the only document that could be offered by plaintiff as evidence is the renewal form signed in August 2008, wherein defendant Debbie Peery answered "no" to the following questions: (1) were there any physical changes to the premises? (2) has the insured changed the operation of the business in the past year? (3) are there any new, altered or discontinued oeprations? and (4) are there any contemplated changes in the operations? Defendants indicate that there is no evidence that these questions were answered untruthfully, and the first time defendants inquired about the ownership of the property was at defendant Debbie Peery's Examination Under Oath, two years after the loss.

Plaintiff responds that defendants' contention that she first learned of the title dispute after purchasing the property is "highly suspect" as the title company had the information concerning the conflicting deeds, and therefore that information should have been known to defendant Debbie Peery at the time the property was purchased. The Court, however, finds there is a big difference between whether defendants should have known of the dispute and whether they actually knew. And regardless, plaintiff has not produced an example of where defendants made such a misrepresentation. Without the original application form, and with only one page of a form where defendant Debbie Peery made no misrepresentations, the Court finds plaintiff has not demonstrated a misrepresentation occurred.

Furthermore, defendants argue that plaintiff cannot demonstrate materiality. To demonstrate materiality under Missouri law, the standard is whether the misrepresentation "would have influenced a reasonably careful insurance company's decisions concerning the acceptance of risk and what premium to charge[.]" Adams v. Columbia Mut. Ins. Co.,

---

[9]Plaintiff does not attempt to cure this defect in its response to the motion for summary judgment. On the record before it, the Court has no information as to what defendants warranted in their application for insurance.

978 S.W.2d 10, 11 (Mo. App. 1998). A misrepresentation is material if an insurer, "acting reasonably and naturally in accord with [its] custom and practice, would have relied on the representation." Id. Defendants argue that plaintiff has not identified any witness who will testify that the overlapping property lines would have influenced a reasonably careful insurance company in deciding whether to accept the risk and what premium to charge, nor has it identified a witness to testify as to industry custom and practice as to whether it would have relied on defendants' purported misrepresentations.

Plaintiff argues in response that defendant Debbie Peery made "admissions" that the "overlapping deeds on the subject property would be an important material consideration for the insurance company in deciding whether or not to stay on the insurance risk." Doc. No. 84, p. 6. However, the standard on materiality is not whether defendant, unschooled in the law, agreed with a leading question in a pre-lawsuit Examination Under Oath; the standard is whether the alleged misrepresentation or concealment would have influenced a reasonably careful insurance company in deciding whether to accept the risk, and whether an insurer would have relied on such a representation.

Plaintiff further argues that a misrepresentation involving ownership interests is material as a matter of law. For the proposition, plaintiff cites Central Bank of Lake of the Ozarks v. First Marine Ins. Co., 975 S.W.2d 222 (Mo. Ct. App. 1998), and implies that all misrepresentations involving ownership interest are material as a matter of law. The Court finds, however, that this does not appear to be an accurate analysis of Central Bank, wherein the Missouri Court of Appeals found a specific misrepresentation as to ownership (omitting as part owner on insurance policy the insured's son, whose previous application to be added as an insured was rejected by the insurance company, id. at 225-26), was material as a matter of law. The situation in Central Bank is quite distinguishable from the situation in the present matter; a dispute over property lines that affects only part of one

13

employee parking space would seem to have very little effect on whether to insure a business for approximately $500,000 in losses. At the very least, plaintiff would need someone to testify that the alleged misrepresentation was material, and in responding to summary judgment plaintiff has failed to provide any affidavits or testimony from its employees or agents as to materiality.

As plaintiff has failed to demonstrate that it is able to set forth a submissible case on material misrepresentations as to the property line dispute, defendants' motion for partial summary judgment will be **GRANTED.**

## V. Conclusion

Therefore, for the foregoing reasons, (1) Plaintiff Federated Mutual Insurance Company's Motion for Summary Judgment (Doc. No. 59) is **DENIED**; and (2) Defendants' Motion for Partial Summary Judgment (Doc. No. 72) is **GRANTED**.

**IT IS SO ORDERED.**

Date: March 7, 2012  /s/ *Fernando J. Gaitan, Jr.*
Kansas City, Missouri  Fernando J. Gaitan, Jr.
  Chief United States District Judge