IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | | |
|---|---|---|
| FEDERATED MUTUAL INSURANCE CO., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 11-00172-CV-W-FJG |
| | ) | |
| PEERY'S AUTO PARTS, L.L.C., | ) | |
| C&A AUTOMOTIVE, INC., | ) | |
| DEBBIE PEERY, CODY PEERY, and | ) | |
| ABBY PEERY, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

**ORDER**

Pending before the Court are the parties' various motions in limine (Doc. Nos. 112-125). Each will be considered, below.

**I.      Background**

On November 24, 2010, plaintiff filed its Complaint for Declaratory Judgment (Doc. No. 1). On February 22, 2011, defendants filed an answer to plaintiff's complaint which included counterclaims for breach of contract and vexatious refusal to pay. See Doc. No. 15. Plaintiff's complaint alleges that plaintiff issued a policy of insurance (hereinafter, "Policy") to Peery's Auto Parts, L.L.C. (hereinafter, "Peery's") with C&A Automotive, Inc. (hereinafter, "C&A") listed as an additional named insured under the policy. Both businesses are auto parts stores.

On October 25, 2008, a fire damaged the premises of C&A, and as a result of the fire loss, plaintiff paid C&A's claim totaling approximately $470,036.26 for damage of the building and contents. On October 27, 2010, over two years after the fire, plaintiff took defendant Debbie Peery's Examination Under Oath. Doc. No. 60, Ex. 10. Less than a month later, plaintiff filed the present lawsuit. Plaintiff claims in its complaint that the Policy

is void due to concealment or misrepresentation of material facts surrounding the underwriting, procurement, and renewal of the Policy.

## II. Defendants' Motions In Limine (Doc. Nos. 112-124)

### A. Defendants' Motion In Limine No. 1 Regarding Randall Wilson's Expert Testimony Concerning Materiality and Motion to Strike Related Portions of Expert Report (Doc. No. 112)

Defendants request the Court exclude the expert testimony of Randall Wilson regarding materiality and strike the related portions of his expert report. Defendants note that Randall Wilson, CPA, asserts the following in his expert report:

1. "[A] material misstatement of the facts and resulting material overstatement of amount with respect to the claim categories of debris removal, equipment losses, refrigerator loss, accounts receivable and business interruption losses in an amount totaling $60,810.69." (Doc. No. 112, Ex. A, p. 2)

2. The debris removal "claim for $24,000.00 is a material misrepresentation." (Doc. No. 112, Ex. A, p. 2)

3. "[T]he submission of the higher priced invoice [for the refrigerator] is a material misrepresentation." (Doc. No. 112, Ex. A, p. 3)

4. The "submission for the hydraulic die cut equipment was duplicative and therefore a material misrepresentation of the claim." (Doc. No. 112, Ex. A, p. 3)

5. The submission of the policy limit using "unfounded documentation as a proof of loss" for accounts receivable is a material misrepresentation. (Doc. No. 112, Ex. A., p. 5).

6. That damages claimed "for business interruption [are] materially overstated" and "the submission of the $25,000.00 is a material misrepresentation of the claim amount." (Doc. No. 112, Ex. A., p. 6)

7. That depreciated value of this equipment as of December 2007 was $4,519.00. (Doc. No. 112, Ex. A.,

2

p. 3).

Defendants assert that a CPA such as Mr. Wilson should not be allowed to offer legal conclusions, and that opinions that certain items were "material misrepresentations" should be excluded. Defendants argue that Mr. Wilsons' conclusions infringe on the function of the jury, and the determination of materiality is generally a question for the jury. See Galvan v. Cameron Mut. Ins., 733 S.W.2d 771 (Mo. Ct. App. 1987). Although experts may offer opinions based on factual assumptions, they may not offer opinions amounting to legal conclusions. See e.g., United States v. Klaphake, 64 F.3d 435, 438 (8th Cir. 1995) (upholding district court decision excluding testimony by a lawyer as to the legality of a trust agreement); Shaw Group, Inc. v. Marcum, 516 F.3d 1061, 1068 (8th Cir. 2008) (allowing testimony from expert on ordinary business practices but excluding his testimony as to duty under a contract). Defendants further assert that the depreciated value on the equipment loss claim is not supported, as Wilson is not qualified to determine the depreciated value of this equipment.

In response, plaintiff argues that Randall H. Wilson is a Certified Public Accountant, Certified Fraud Examiner, and Certified Forensic Accountant. Plaintiff argues that defendants are questioning the factual basis of Mr. Wilson's opinion, and as the factual basis of an opinion goes to weight, not admissibility, these are questions for the jury to decide. Loudermill v. Dow Chemical Co. v. Central Surety & Ins. Corp., 863 F.2d 566, 570 (8th Cir. 1988). Plaintiff further notes that the Eighth Circuit has recognized Mr. Wilson as a qualified expert. See Cedar Hill Hardware and Const. Supply, Inc. v. Ins. Corp. of Hannover, 563 F.3d 329, 350 (8th Cir. 2009).

In reply, defendants indicate that they are not questioning Mr. Wilson's qualifications; instead, they are arguing that he should not be allowed to offer a legal conclusion, as such testimony encroaches on the function of the jury.

**Ruling:** Defendants' Motion (Doc. No. 112) is **GRANTED**; Mr. Wilson will not be allowed

3

to present legal conclusions regarding "material misrepresentations" at trial, nor will he be allowed to testify about the depreciated value of equipment.

**B.  Defendants' Motion in Limine No. 2 Regarding Expert Testimony Concerning Debris Removal, Refrigerator, and Equipment Losses and Motion to Strike Related Portions of Expert Report (Doc. No. 113)**

With this motion, defendants' challenge three of expert Wilson's opinions: (1) the debris removal claim for $24,000 is a material misrepresentation (Doc. No. 113, Ex. A, p. 2); (2) the submission of the higher priced invoice for the refrigerator is a material misrepresentation (Doc. No. 113, Ex. A, p. 3); and (3) the submission for the hydraulic die cut equipment was duplicative and therefore a material misrepresentation of the claim (Doc. No. 113, Ex. A, p. 3).

Defendants assert that Wilson, as a CPA, is without expertise to testify about the cost of debris removal, refrigerator loss, and hydraulic equipment loss, as he lacks knowledge skill, experience, training or education in an insurance company's claims process.  Defendants further assert that the opinion that these are material misrepresentations is not based on scientific knowledge, and Wilson offers no facts or analysis as to why he gives an opinion on materiality or that a misrepresentation occurred. Defendants also assert that, even if these opinions were relevant, their probative value is substantially outweighed by the danger of unfair prejudice, as it would amount to "backdoor" testimony of intent and liability (and amount to an expert instructing the jury on legal standards).  Finally, defendants argue that expert testimony is not necessary on issues that are "lay matters which a jury is capable of understanding and deciding without the expert's help."  Andrews v. Metro N. Commuter R.R. Co., 882 F.2d 705, 708 (2d Cir. 1989).  Here, where Mr. Wilson has no personal knowledge regarding the alleged debris removal billing, refrigerator loss, and hydraulic equipment loss, defendants assert that his testimony only addresses matters which a jury is capable of understanding without expert testimony.

Case 4:11-cv-00172-FJG   Document 175   Filed 04/05/12   Page 4 of 19

Plaintiff responds that the opinions regarding debris removal, refrigerator loss, and hydraulic equipment loss are questions as to the factual basis of the testimony, and such questions go to weight, not admissibility, of testimony. Therefore, plaintiff argues these are questions for the jury to decide. <u>Loudermill v. Dow Chemical Co. v. Central Surety & Ins. Corp.</u>, 863 F.2d 566, 570 (8th Cir. 1988).

Defendants reply that they do not dispute Mr. Wilson's qualifications or reliability; instead defendants assert that his opinions on materiality or that a misrepresentation occurred are bare legal conclusions and matters which need no expert testimony.

**Ruling:** <u>Defendants' motion is **GRANTED**, as Mr. Wilson's proposed testimony is as to matters that a lay juror could understand without expert testimony.</u>

    **C.**    **Defendants' Motion in Limine No. 3 Regarding Expert Testimony Concerning the Likelihood that a Percentage of Customers Typically Pay Regardless of Loss of Records and Motion to Strike Related Portion of Expert Report (Doc. No. 114)**

Defendants request the Court bar evidence or argument by plaintiff's expert (and strike the related portion of his report) that a certain percentage of customers typically pay regardless of loss of business records. Plaintiff's expert Randall Wilson expresses the opinion, "Please note that this [estimate] does not take into account the likelihood that a percentage of the customers typically pay the amount they owe to the insured regardless of the loss of receivable records." Doc. No. 114, Ex. A, p. 5. Defendants state that Mr. Wilson is a CPA, not a psychiatrist or sociologist, so he should not opine on the behavior of consumers following a fire in which records are lost. Defendants also note that Mr. Wilson does not provide a number for that percentage. Defendants argue that this opinion is not the product of reliable principles and methods, but is pure speculation. Additionally, they argue that this opinion's probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury.

Plaintiff responds that defendants' criticisms are as to the factual basis for the opinion, and as the factual basis of an opinion goes to weight, not admissibility, these are

questions for the jury to decide. <u>Loudermill v. Dow Chemical Co. v. Central Surety & Ins. Corp.</u>, 863 F.2d 566, 570 (8th Cir. 1988).

Defendants reply that their motion has nothing to do with knowledge or factual basis, but has to do with exclusion of pure speculation. <u>See</u> <u>Jaurequi v. Carter Mfg. Co., Inc.</u>, 173 F.3d 1076, 1084 (8th Cir. 1999) (finding opinion that untested, unspecified safety devices should be placed on a farm implement should be excluded as it was "unabashed speculation"); <u>Weisgram v. Marley Co.</u>, 169 F.3d 514, 519-20 (8th Cir. 1999)(holding that a district court abused its discretion in allowing expert "to speculate before the jury . . . by relying on inferences that have absolutely no record support"). Defendants suggest that an opinion that "a percentage" of people typically pay regardless of lost records is just the sort of speculation that should be stricken.

**Ruling:** <u>Defendants' motion is</u> **GRANTED.**

### D. Defendants' Motion in Limine No. 4 Regarding Past Insurance Claims and Motion to Strike Related Portions of Debbie Peery's Examination under Oath (Doc. No. 115)

Defendants move to bar evidence or argument by plaintiff regarding past insurance claims during voir dire and trial and strike related portions of Debbie Peery's Examination Under Oath. Defendants indicate they believe plaintiff will introduce evidence of a past insurance claim made by defendant Debbie Peery to Farm Bureau Insurance Company that included a homeowners insurance claim for a refrigerator damaged by lightning. A representative of Farm Bureau Insurance Company (Mr. Rich Stone) is named as a witness by plaintiff. Defendants indicate that although the receipt for the refrigerator will be in evidence in this case, defendants assert that the fact that this refrigerator was obtained via an unrelated insurance claim is not relevant to the instant matter, is a waste of the jury's time, would be confusing to the jury, and highly prejudicial to defendants. Further, defendants note that the parties have stipulated to the fact that on March 24, 2009, C&A Automotive submitted an invoice from Do It Best Home Center dated September 19, 2008,

for a Whirlpool Refrigerator which cost a total of $2,014.84, and that the refrigerator which was actually damaged in the fire was purchased in 2005 from Clark's Furniture for $460.00. See Doc. No. 64, ¶¶ 11-12.

Plaintiff responds that this case is similar to U.S. v. Noland, 960 F.2d 1384 (8th Cir. 1992), where appellant asserted that the trial court erred in admitting evidence pertaining to a ring being lost and claimed on a 1982 insurance form and then, subsequently being stolen and claimed on a 1989 insurance form. The Eighth Circuit affirmed Noland's conviction. Plaintiff further argues that this evidence is not being offered to implicate Ms. Peery in a prior bad act, but is instead offered to show Ms. Peery was dishonest in her Examination Under Oath when she said she had not pursued other insurance claims. Plaintiff argues that proof of one's involvement in a misrepresentation is relevant and admissible under FRE 404(b) as to intent and plan or motive.

Defendants reply that Debbie Peery did not lie to plaintiff; instead, they assert that at the time of her Examination Under Oath "she simply did not remember trivial details about refrigerators at a time when her husband was terminally ill." Doc. No. 146, p. 1. Defendants criticize plaintiff for citing cases regarding criminal fraud, and attempting to characterize a failure to remember the specifics of a prior claim as a "prior bad act" under FRE 404. Defendants state that "Plaintiff should not be allowed to conduct a parallel criminal trial on behalf of Farm Bureau for a past insurance claim, as they surely intend to do, to the extreme prejudice of Defendants." Again, defendants argue that any probative value is substantially outweighed by danger of unfair prejudice, confusion of issues, or misleading the jury, or by considerations of delay, waste of time, and needless presentation of cumulative evidence.

**Ruling:** Defendants' motion is **PROVISIONALLY GRANTED**, subject to reconsideration after the Court reviews any proposed designations submitted by the parties as discussed in the next paragraph.

7

The Court notes that neither party has cited to the relevant portions of the Examination Under Oath in their briefing of this motion, nor has plaintiff designated portions of the Examination Under Oath for use at trial (instead, plaintiff has simply listed the entire Examination Under Oath, which appears to have lasted over 4 hours, as a trial exhibit, Doc. No. 66). The Court presumes that plaintiff does not intend to use the entire Examination Under Oath as evidence at trial. Therefore, so that the Court can better manage the presentation of evidence at trial, Plaintiff is **ORDERED** to designate, by page and line number, the portions of the Examination Under Oath it intends to use at trial as part of its case-in-chief on or before **MAY 1, 2012**. Defendants shall file objections to the proposed testimony from the Examination Under Oath on or before **MAY 8, 2012**. Defendants shall also file any counter-designations on or before **MAY 8, 2012**, and plaintiff shall file objections to any counter-designations on or before **MAY 15, 2012.**

### E. Defendants' Motion in Limine No. 5 to Exclude Evidence or Argument Regarding Underwriting Standards (Doc. No. 116)

Defendants request the Court exclude evidence or argument regarding underwriting standards, as they assert the witnesses on plaintiff's witness list (Doc. No. 65) are not designated as experts regarding underwriting standards, nor are the non-expert witnesses qualified to testify on underwriting standards or practices. Plaintiff's witnesses include (1) Jill Bean, a special investigator; (2) David Dostal, a claims supervisor; (3) Brian Hughes, a claims adjuster; and (4) Randall Wilson, a CPA and the only designated expert. Defendants assert that none of these witnesses are able to competently testify on the subject of underwriting (including but not limited to the evaluation of risk and amount of premium as determined upon obtaining insurance), nor are they competent to testify concerning industry standards on underwriting. Instead, defendants state any testimony on the subject of underwriting would be pure speculation.

Plaintiff responds that none of these witnesses will be testifying as experts, but they will be testifying based on their own education, training, and work experience in the field,

8

including their personal involvement and work on defendants' insurance policy. Plaintiff states that these witnesses can all testify on the subject of underwriting. Plaintiff also indicates that defendants fail to point to specific testimony of plaintiff's witnesses that they seek to bar, which prevents this Court from being able to adequately evaluate whether the testimony would even violate Rule 701.

Defendants reply that in determining materiality in a misrepresentation in procuring insurance, the inquiry is not whether the misrepresentation actually affected the insurer's decision, but whether "it would have influenced a reasonably careful insurance company's decisions concerning the acceptance of risk and what premium to charge[.]" Adams v. Columbia Mut. Ins. Co., 978 S.W.2d 10, 11 (Mo. App. 1998). Defendants note that none of the proposed witnesses are underwriters, and that any testimony from them as to underwriting would be hypothetical in nature, and only appropriate for expert testimony. See Am. Gen. Life Ins. Co. v. Schoenthal Family, LLC, 248 F.R.D. 298, 305 (N.D. Ga. 2008), aff'd 555 F.3d 1331 (11th Cir. 2009) (finding that the question of whether insurance would have issued had a reasonable insurance company known the insured's true financial condition, is a classic hypothetical statement based on specialized expert knowledge).

**Ruling:** Defendants' motion is **PROVISIONALLY DENIED**, subject to reconsideration. Plaintiff is **ORDERED** to file a statement, on or before **MAY 1, 2012**, (1) indicating whether witnesses Jill Bean, David Dostal, Brian Hughes, and Randall Wilson intend to testify at trial about underwriting standards, and, (2) if so, providing in the form of affidavits or statements from counsel (a) the subjects of their testimony and (b) a short demonstration that their conclusions arise from their education, training, and work experience in the field, including their personal involvement and work on defendants' insurance policy.

The Court notes that underwriting standards may be no longer at issue at trial, given its ruling on summary judgment in Doc. No. 163; if plaintiff no longer plans to put on any evidence as to underwriting standards, plaintiff shall notify the Court of this on or before

9

### F. Defendants' Motion in Limine No. 6 to Exclude the Use of "Fraud" or Innuendo of Fraudulent Conduct by Defendants and Motion to Strike Related Portions of Debbie Peery's Examination under Oath (Doc. No. 117)

Defendants move for an Order excluding the use of the word "fraud" during the course of voir dire and trial, and striking related portions of Debbie Peery's Examination Under Oath. Defendants state they anticipate plaintiff will use the term "fraud," and they believe that term is not relevant or probative, but its use would be highly prejudicial. Defendants note that Plaintiff's Proposed Voir Dire (Doc. No. 105), questions 25(d) and 27 use the word "fraud," even though fraud is not pled in the complaint nor will a question on fraud be submitted to the jury. Defendants also note exchanges in the Examination Under Oath where plaintiff's counsel questions Debbie Peery on fraud, citing the following exchanges (but noting that others also exist): 122:11-12, 137:9-23, and 159:11-160:1.

Plaintiff responds that defendants "erroneously" argue that fraud is not relevant to this case (Doc. No. 141, p. 1). Plaintiff states "Debbie Peery as much as admitted committing insurance fraud in her Examination Under Oath," and that fraud is relevant as demonstrated by the content cited in Defendants' Motion In Limine No. 6. Plaintiff further argues that "in the context of the facts of this case, this particular issue would be better dealt with through appropriate, timely objections during the course of trial, rather than through an order in limine."

Defendants reply that although plaintiff suggests Ms. Peery admitted committing insurance fraud, they do not cite where such an admission was made. Defendants state, "It is just this sort of ease Plaintiff bandies about the term 'fraud' that concerns Defendant." Defendants again note that no crime has been charged based on the facts of this case, and plaintiff did not allege fraud in its complaint. Defendants again suggest that any probative value is substantially outweighed by the danger of unfair prejudice, confusion of issues, or misleading the jury.

10

**Ruling:** Defendants' motion is **GRANTED.**

>   **G.    Defendants' Suggestions in Support of Their Motion in Limine No. 7 Barring Use of "Arson" and any Rumors or Innuendo of Same, and Motion to Strike Related Portions of Debbie Peery's Examination Under Oath (Doc. No. 118)**

Defendants move for an Order barring evidence or argument using the word "arson" and any rumors or innuendo regarding same, and move to strike related portions of Debbie Peery's Examination Under Oath.  Defendants state that plaintiff's proposed voir dire questions 12, 13, 15, 16, 17, 19, 20, 21, and 28 (in Doc. No. 105) are all improper attempts to prejudicially interject arson into the case, even though it was officially concluded that the fire was non-criminal, and accidental.  Defendants indicate that one of plaintiff's witnesses is Mr. Bruce Thurlo, Arson Invesigator, Missouri State Fire Marshall's Office.  Defendants state that presenting an arson investigator, when plaintiff's complaint does not allege arson caused the fire, is a waste of time, needless, and would present the danger of unfair prejudice.  Defendants also note that certain exchanges from Debbie Peery's Examination Under Oath discuss arson rumors, and should be excluded by the Court: pp. 72:13-23, 73:6-11, 73:24-25; 74:1-22; 75:1-3; 75:6-24.

Plaintiff responds that defendants' contentions are without merit, as (1) plaintiff's voir dire questions do not prejudicially interject arson into the case, but rather seek to determine whether potential jurors have positive or negative opinions about firefighters or local police (2) Mr. Thurlo, the arson investigator, would provide helpful testimony to the jury, as he will be able to explain the Fire Investigation Report to the jury, and this would not be a waste of time, and would prevent jury confusion; (3) the portions of Debbie Peery's Examination Under Oath should not be stricken, as they are relevant and will not unfairly prejudice defendants, as Debbie Peery throughout denies that she set the fire.

Defendants reply that where it was officially concluded that the fire was non-criminal and accidental, discussion of arson and other rumors is only intended to plant a seed in the mind of jurors that the fire could have been intentionally set.  Defendants state that

plaintiff's explanation is not believable when proposed voir dire question 28 asks "Has anyone present heard of anyone starting a fire in order to collect the insurance money? Who believes that there are people who will burn their property to collect the insurance money?" Defendants indicate that they "cannot cross-examine a nameless, faceless community that spread false rumors." Defendants further note that plaintiff has not explained the relevance of this information. Defendants indicate that exclusion of this evidence would save the Court hours of time of unnecessary evidence.

**Ruling:** Defendants' motion is **GRANTED.**

### H. Defendants' Motion in Limine No. 8 Regarding Distribution of Settlement Funds (Doc. No. 119)

Defendants move the Court to bar evidence or argument during voir dire or trial regarding the distribution of settlement funds. Defendants note that plaintiff will seek to introduce evidence and argument of what C&A did with the settlement funds following payment of the claim. Defendants state, however, that what ultimately happened to the proceeds once they were received by C&A is irrelevant to proving intentional misrepresentations of material fact, as the policy does not require the funds be disbursed in any particular way.

Defendants argue that plaintiff cannot show any wrongful conduct on the part of the individual defendants, and therefore should not present evidence of how the funds were distributed. Further, defendants argue that even if the information was relevant, its relevancy is significantly outweighed by the potential for undue prejudice.

Plaintiff responds that evidence as to how defendants divided and spent the insurance payments is relevant to plaintiff's claim of unjust enrichment, as such claim "requires evidence as to how the money was divided amongst them." Plaintiff argues that the probative value outweighs any unfair prejudice or confusion. Plaintiff further argues it has pled an adequate claim of unjust enrichment against all defendants.

Defendant replies that what ultimately happened to the funds is irrelevant to proving

12

intentional misrepresentations of material fact under a policy of insurance, as the policy does not provide that insureds are to distribute settlement funds in a particular way. Further, if the Court finds distribution to be relevant, its relevancy is significantly outweighed by the potential for undue prejudice.

**Ruling:** The Court will defer ruling on this motion until the parties' Executive Summaries (Doc. Nos. 167 and 171), as well as defendants' motion for reconsideration on their motion to dismiss (Doc. No. 172) are fully briefed.

I. **Defendants' Motion in Limine No. 9 Regarding Defendants Collectively being Referred to as "Peerys" (Doc. No. 120)**

Defendants move for an Order barring plaintiffs from collectively referring to defendants as "Peerys." Defendants note that there are five separate defendants: Peery's Auto Parts, L.L.C., C&A Automotive, Inc., Debbie Peery, Cody Peery, and Abby Peery. Defendants note that, as four of the five defendants have the name Peery, there is an inclination to refer to the defendants collectively as the Peerys. Defendants state this is highly prejudicial to them, as Debbie Peery, Cody Peery, and Abby Peery have no relationship to plaintiff other than the receipt of a portion of the settlement funds from C&A, and there are no allegations that the individual defendants (1) had any involvement in the investigation or settlement of the claim; (2) had any involvement in the underwriting and procurement of the Policy; or (3) were parties to the subject insurance contract or owed a duty to the insurance company.

Plaintiff responds that motions in limine should only concern relevant and prejudicial evidence, and "the nomenclature used by Plaintiff to identify Defendants does not constitute appropriate evidence as the subject matter of a Motion in Limine and it should therefore be denied." Plaintiff further argues that it has pled a sufficient relationship that the claims against the individual Peery defendants should proceed.

**Ruling:** Defendants' motion is **GRANTED**; each party shall be referred to at trial by its own name.

**J.** **Defendants' Motion in Limine No. 10 Excluding Evidence or Argument Regarding Property Dispute if Motion for Partial Summary Judgment is Sustained on that Issue (Doc. No. 121)**

Defendants move for an order barring evidence or argument by plaintiff at voir dire or trial regarding a property line dispute if defendants' Motion for Partial Summary Judgment is sustained on that issue. Defendants state that if their motion for partial summary judgment is granted, evidence regarding misrepresentations regarding ownership interest in the property is irrelevant to the claims being tried, and is substantially more prejudicial than probative. Further, defendants argue that such evidence would undoubtedly confuse the jury.

Plaintiff responds, "It is not entirely clear why Defendants' [sic] believe it is necessary to file this Motion, because if the Court were to grant their Motion for Partial Summary Judgment the property dispute would not longer be an issue for trial." Doc. No. 135, p. 1. **Ruling:** As the Court granted defendants' motion for partial summary judgment by Order dated March 7, 2012 (Doc. No. 163), defendants motion will be **GRANTED**, as the property line dispute is a moot issue.

**K.** **Defendants' Motion in Limine No. 11 to Exclude Evidence or Argument Regarding Interest Due on the Amounts of Money Owed, if any (Doc. No. 122)**

Defendants move for an order barring evidence or argument at voir dire or trial by plaintiffs regarding interest due on the amounts of money owed, if any. Defendants state that as it is the trial judge's determination to award prejudgment interest, any mention of interest should be prohibited. Defendants state that any arguments with respect to interest or holding money for a period of time would be more prejudicial than probative. Plaintiff filed no response to this motion.

**Ruling:** Defendants' motion is **GRANTED.**

**L.     Defendants' Motion in Limine No. 12 to Exclude Evidence or Argument Regarding Vexatious Refusal Penalties and Attorney Fees, and Motion to Bifurcate Trial (Doc. No. 123)**

Defendants move the Court to bar evidence or argument during the course of voir dire or trial regarding vexatious refusal penalties and attorneys fees and to bifurcate the trial (pursuant to Fed. R. Civ. P. 42(b)) for separate court determination of penalties and attorneys fees. Defendants suggest that RSMo. § 375.420 provides that on a finding of vexatious refusal to pay, "the court or jury may" award the insured "a reasonable attorney's fee." Defendants indicate that if they achieve a verdict in their favor on their vexatious refusal to pay counterclaim, they request a Court determination of the amount of penalties and attorney's fees. Therefore, they believe that the issues of penalties and attorneys fees should not be addressed in evidence or argument before the jury. Cedar Hill Hardware & Const. Supply, Inc. v. Ins. Corp. of Hannover, 4:04CV743-DJS, 2006 WL 508315 (E.D. Mo. Mar. 1, 2006), aff'd, 563 F.3d 329 (8th Cir. 2009).

Plaintiff responds, "[J]udicial economy would best be served by presenting all of the evidence, including that concerning penalties and attorney's fees in a single proceeding before the jury." Plaintiff asserts that the jury would be capable of hearing evidence and issuing an award if defendants meet their burden of proof, and there is no need to burden the Court with a separate proceeding.

Defendants reply that plaintiff misunderstands the motion to be requesting evidence be presented in a second phase. Defendants state they will present all their evidence on vexatious refusal to pay during trial; however, they ask that the court determine the amount of the penalty and attorneys fees in a second hearing.

**Ruling:** Defendants' motion is **DENIED.** The weight of authority on this issue is that if a party has a jury trial on liability, the jury should also be tasked with assessing damages, including attorneys fees and statutory penalties. See Martin v. Shearson Lehman Hutton, Inc., 986 F.2d 242, 246 (8th Cir. 1993) (noting that Missouri's vexatious refusal statute

provides "that the amount [of attorney's fees] is to be fixed by 'the court or jury,' depending, presumably, on whether the trial itself is to a judge or to a jury"). Notably, in *Cedar Hill* (the case cited by defendants), the Eastern District of Missouri has a local rule that provides that attorneys fees are to be determined by the Court on post-judgment motions, and the Court in *Cedar Hill* found that separation of attorneys fees was appropriate given the local rule. No such local rule exists in the Western District of Missouri.

### M. Defendants' Motion in Limine No. 13 Regarding the Use or Mention of Nine (9) Missing Pages of the Insurance Renewal Form and Motion to Strike the Renewal Form (Doc. No. 124)

Defendants move for an Order barring evidence or argument by plaintiff regarding the use or mention of nine missing pages of the insurance removal form, and to strike the renewal form. Defendant notes that Debbie Peery signed a renewal form provided to her on August 13, 2008. In its opposition to defendants' motion for partial summary judgment, plaintiff suggested that there are nine missing pages to the renewal form; however, they did not produce them to defendants, did not make them an exhibit to any motions or responses, and have not listed them as a trial exhibit. Defendants argue that plaintiff should not be able to use the nine missing pages at trial, as the probative value of incomplete documents is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury.

Plaintiff responds that it did not produce or attach the document because it was in Defendants' possession and they were using it to support their argument. Plaintiff further argues that the other 9 pages of the document "contain additional questions addressing the Defendants' ownership interest which were not answered truthfully." Doc. No. 137, p. 2.

Defendants reply that there is no way to tell what the other 9 pages are, and the only entity that would have this knowledge is the plaintiff itself, as the renewal form originates from plaintiff and should be kept in the regular course of business of an insurer. Further, defendants note plaintiff makes the naked assertion that the missing pages contain

16

additional questions addressing the defendants' ownership interest which were not answered truthfully; if that were the case, plaintiff should have produced those documents or attached them to its response.

**Ruling:** Defendants' motion is **GRANTED**, for the reasons stated in the Court's Order on defendants' motion for Summary Judgment (Doc. No. 163).

### III.    Plaintiff's Motions In Limine (Doc. No. 125)

Plaintiff moves for an order in limine preventing all parties, witnesses, lawyers, and anyone else, from stating, inferring, referring to, indicating, or otherwise attempting to offer any evidence or documentation or any other items at any time from the commencement of voir dire through the end of the trial, any suggestion, testimony, evidence or other mention of the following individuals (listed on defendants' witness list): (1) James A. Novak; (2) Robert Payne; (3) Marvin Turley; (4) Larry Walters; (5) George A. Williams.

Plaintiff suggests that all five of these witnesses should have been disclosed as experts, and that defendants failed to disclose them pursuant to the Court's Scheduling and trial Order.  Plaintiff argues that (1) Novak is anticipated to testify as to the income, taxes, and other financial information of Peery's, as well as industry standards and practices; (2) with regard to Payne, plaintiff does not indicate what it anticipates Mr. Payne's testimony will be, but that it will be regarding "scientific, technical or specialized knowledge"; (3) with respect to Turley, plaintiff argues it anticipates defendants will attempt to introduce testimony regarding income, taxes, and other financial information of defendants, as well as industry standards and practices; (4) with respect to Walters, plaintiff indicates it anticipates defendants will attempt to introduce testimony regarding the Department of Natural Resources Inspection of the property following the fire, as well as other scientific, technical or specialized knowledge; and (5) with respect to Williams, plaintiff indicates it anticipates defendants will attempt to introduce testimony regarding the income, taxes and other financial information of Peery's, as well as industry standards and practices.

Defendants respond that none of the five witnesses identified by plaintiff will offer undisclosed expert opinions. Defendants note that James A. Novack, CPA, prepared the 2008 income tax return for C&A.[1] Robert Payne was a potential buyer of the business of C&A automotive before it burned (defendants indicate his testimony may relate to his evaluation of the business condition). Marvin Turley was an employee of C&A and was responsible for business operations. Larry Walters did a DNR inspection and report and prepared an estimate for debris removal for defendants. George A. Williams prepared the 2007 income tax returns for C&A Automotive, Inc. Defendants indicate that all five of these witnesses are <u>fact</u> witnesses, whose testimony is admissible because it is based on their perception and their direct participation in the events about which they are testifying. Defendants note cases allowing testimony by doctors and bookkeepers as fact witnesses when they reached their conclusions based on their own personal knowledge.

<u>**Ruling:** Plaintiff's motion is **PROVISIONALLY DENIED**, subject to reconsideration. Defendant is **ORDERED** to file a statement, in the form of affidavits or statements from counsel, on or before **MAY 1, 2012**, as to witnesses (1) James A. Novak; (2) Robert Payne; (3) Marvin Turley; (4) Larry Walters; (5) George A. Williams, providing (a) the subjects of their testimony and (b) a short demonstration that their conclusions arise from their education, training, and work experience in the field, including their personal involvement with C&A Automotive.</u>

## IV.    Conclusion

Therefore, for the foregoing reasons: (1) Defendants' motion, Doc. No. 112 is **GRANTED**; (2) Defendants' motion, Doc. No. 113 is **GRANTED**; (3) Defendants' motion,

---

[1]In a subsequent motion, defendants indicate that they recently learned that Mr. Novack did not prepare C&A Automotive, Inc.'s 2008 tax return, but that a member of his office, Carmen M. Owen, did. Defendants have moved to substitute Ms. Owen for Mr. Novack. <u>See</u> Doc. No. 156. Plaintiff opposes. <u>See</u> Doc. No. 165. The Court will rule that motion at a later time.

18

Doc. No. 114 is **GRANTED**; (4) Defendants' motion, Doc. No. 115 is **PROVISIONALLY GRANTED**, subject to reconsideration after submission of designations from the Examination Under Oath, as detailed on page eight of this Order; (5) Defendants' motion, Doc. No. 116 is **PROVISIONALLY DENIED**, subject to reconsideration after submission of the information detailed on page nine of this Order; (6) Defendants' motion, Doc. No. 117 is **GRANTED**; (7) Defendants' motion, Doc. No. 118 is **GRANTED**; (8) the Court **DEFERS** ruling on Defendants' motion, Doc. No. 119 until the executive summaries and defendants' motion for reconsideration of its motion to dismiss are fully briefed; (9) Defendants' motion, Doc. No. 120 is **GRANTED**; (10) Defendants' motion, Doc. No. 121 is **GRANTED**; (11) Defendants' motion, Doc. No. 122) is **GRANTED**; (12) Defendants' motion, Doc. No. 123 is **DENIED**; (13) Defendants' motion, Doc. No. 124 is **GRANTED**; and (14) Plaintiff's motion (Doc. No. 125) is **PROVISIONALLY DENIED**, subject to reconsideration after submission of the information detailed on page 18 of this Order.

      **IT IS SO ORDERED.**

Date: April 5, 2012                 */s/ **Fernando J. Gaitan, Jr.***
Kansas City, Missouri            Fernando J. Gaitan, Jr.
                                       Chief United States District Judge